The next case is Veterans Legal Advocacy Group v. The Department of Veterans Affairs, 2024-1759. We're ready when you are, Mr. Strong. Good morning, Your Honors. May it please the Court. I'm Tom Strong for Veterans Legal Advocacy Group. VetLAG is a non-profit law firm that helps veterans and their families get redressed for service-connected injuries. The VA harmed VetLAG's clients in VetLAG by mailing decisions, legal notices, and medical records to outdated addresses instead of their VetLAG attorney. Counsel, why isn't this a CAVA-QT case? Okay, well, you are the author of CAVA-QT. I spoke for the Court. So, when you were deciding CAVA-QT, you did not have an order in front of you, and you didn't have an order in front of you that materially altered the legal rights and our obligations of the parties. Well, there's no order in the VA to do anything here, right? I think that they did, at least arguably. Well, we can say arguably. But I think that this case is much more like a consent decree case. When we look back at Davis, we have a spectrum of different situations that can raise a prevailing party status. On the one end of the spectrum, we have enforceable judgments on the merits. We have court-ordered consent decrees. And then on the other end of the spectrum, we have resolves that are brought about by the parties. And we also have interlocutory orders that don't really give the party anything. But there's a line that cuts through that spectrum. And that line is defined by the material alteration of the party's relationship. This case is more akin to a consent order case, where you have the court managing an outcome, where promises are being made by the parties. One of the parties here, under oath, is making a promise to the court. And in the same situation- I really am not understanding your distinction. I mean, I know we've got lots of line- maybe we have a line drawing here. But the court's order was to produce affidavits, not because it itself decided the merits action. It was deciding whether or not this case was moot. That was the context of the court's order. So I don't understand how this gets close to the line of court-ordered consent decree. So I think that in my reply brief, in the last pages of my reply brief, you can see where we discussed will, and whether that will was mandatory, and whether that will materially altered the legal relationship by imposing a duty that benefited- that was to the benefit of Veterans Legal Advocacy Group by creating this enduring relief, which is a new system for how we address- for how we change addresses at the VA that was very complicated. And so you have that- when you have the imposition of a duty, and you have a corresponding right, just like you would where there's an enforceable judgment on the merits, where the- but you- but in this case, you didn't have an evaluation of the merits, so it makes it more akin to a consent decree case. But you still have an alteration, and it's enforceable. And Justice Roberts- Chief Justice Roberts pointed this out, is that it's enforceable with a contempt order. So if at any time, the Secretary's statements became false or were false, say that they didn't really make the updates in the system that endure, that would- we would be able to bring a motion for contempt. The only difference between- For contempt for what? I mean, if assuming that were the case, maybe you'd have some other action, an outside thing for these alleged misstatements. But essentially, all that would mean is if they didn't do what they swore they said they were doing or going to do or had done, then the case wouldn't have been moved. And the CAVC would have to go forward and adjudicate this. So this is only about mootness. I can't get by that. The CAVC wasn't deciding the merits of the case. They were deciding whether this case was moot. When we look at the merits decision, and when we look at the EJIA phase, it's a different analysis. The same facts in this case that raise mootness in the lower court raise enduring relief in the EJIA phase. So what you have, and what Chief Justice Roberts said was important in Lackey, is that you have contemptibility. If it's not true, if the parties are saying something that's not true, it's subject to a contempt order. And that puts the imprimatur on the relief. And because there's no imprimatur, therefore CAVACUTI does not apply. And so this is a different kind of case. It's more like a, I would say Lackey was kind of, it was like a, it was a Frankenstein between Soule and Buckanon. And this case is more like Mayher and Buckanon, where you have a situation where the court has impressed its imprimatur on the parties by making them swear to do these things. And that's kind of like what happens in a consent decree. I want to make sure I understand the premise of your argument here, because I understand the Veterans Court believed that the VA had already taken certain voluntary action, and that is to correct the addresses. And then it wanted to, but it wanted to make sure that that statement was true. So it sought these affidavits from these VA officials, and to confirm that such voluntary action had occurred. And then of course the affidavits came in. So in that sense, the Veterans Court believed that it wasn't the court that forced or ordered the VA to change the addresses. Ultimately it was the VA that did it. So I guess your theory doesn't rest on the Veterans Court somehow imposing its will on the VA to change the addresses. Your theory is something else, which is just purely the view that when the court ordered these affidavits to come in, that itself is some change of material change of the legal relationship? Well, as you can see, and the facts here are, they're messy. So I'm trying to drill down. It goes right to the heart of the issue. Everything I said first is something I don't think we can review. I think that is a fact finding by the Veterans Court that the VA had already taken the action, and now it was simply, the Veterans Court was simply trying to confirm that that action had taken place so that it could conclude that this was a properly mooted case. And that may be true. And you may need to remand for the court to apply whether this was in fact judicial relief that was enduring, and to find facts underneath it at the because Wacky came out after the parties filed their principal briefs. But to your question, to your factual question, what had happened was that the VA changed the addresses of the attorneys, but they had not linked the addresses to the clients. And so by virtue of the court's order, by virtue of making these high-ranking officials swear, they actually updated the address to the and it changed the behavior under penalty of perjury, putting the imprimatur on the relief. And because of that, they made a change. They not only made a permanent address change, permanent updates that remain in place today, but they also changed the entire system so that when anybody goes to the VA, and they need, especially for counsel and to help lawyers with their right to counsel, when you go in and you need to change your update, you no longer have to go piecemeal and change your address for every single client by filing a form, that owner's burden. No, you just go and you talk to the IT desk and you tell them that you're an attorney. And that's just like the private attorney general doctrine that was resurrected by Congress. Can you remind me what you requested in your mandamus petition? So we wanted the addresses fixed. Which addresses fixed? We wanted the VA to stop the mis-mail. The attorney addresses. The attorney address, not just the attorney addresses. We just wanted the mail to come to us for our clients. And that's what we asked for. And that's what happened. Ultimately, that's what happened. And so we achieved- But are you really arguing, I think this is just redundant to what Judge Chen has been saying, but are you really arguing that the Veterans Court made the VA correct its databases? What's the basis for that finding? Because my understanding is that the Veterans Court simply made the VA swear that it had corrected the databases before it could grant the government's quest to dismiss for mootness. Oh, no, no, I'm not. Let me be precise because we want to look at the legal, the material alteration of the legal relationship. There was no material alter, there was no duty. So, right, you alter a legal relationship by imposing a duty with a corresponding right. And the VA did not do that as far as the updates were concerned. Just that explained this. But it was the imprimatur of the court pushing and pressuring because the court wanted to in the same way that you would be in a consent decree situation. You're trying to manage the parties. You're trying to get them to resolve the case. And so that's what the VA was kind of doing. That's why the facts are kind of more akin to a consent decree. It didn't impose a duty, but it did enough pressuring to allow the imprimatur to fall on the parties. And that changes it from cabitude, and it makes it its own thing. You're arguing a tantamount case. A tantamount case. Exactly. What happened was tantamount to an order. Sure. There should be a sharp line here. So people involved know who's a prevailing party and who isn't. So Chief Justice Roberts in Lackey, he explains why is a consent decree order very similar to an enforceable judgment on the merits. It has imprimatur. It's impressed on the relief. It lasts. And it may, he says may, it may materially alter the legal relationship of the parties. And you're right, Judge Prost. There wasn't a legal duty as to the addresses, to correcting the addresses, to updating the addresses and making those links. There was no legal duty that was imposed. There was no change in the material relationship. They're still imprimatur because there's pressure. But on the other hand, when the VA gave specific instructions about what it had to do, what it had to do in order to the case, and it said, you will implement this agency-wide, that will is arguably a legal duty. And that legal duty caused them to create a new system for updating addresses. And if you look, I looked last weekend, it's the system is still up on the website. So it's enduring. And to what you wanted to say, this rebuttal, you can continue or save it. I'll save it. Thank you, Your Honor. Mr. Clotham. May it please the Court. The Court should either dismiss this appeal for lack of jurisdiction or affirm because the VA voluntarily provided petitioner relief without any judicial action. I'll address the jurisdictional issue first. Here, the Veterans Court held there was no judicial action changing the legal relationship between the parties. And that is a factual determination that's outside of this Court's review. But we've had cases before in prevailing party. This is about who is the prevailing party under largely Supreme Court precedent. And that seems to me an issue that we would review de novo and a legal question. Yes, Your Honor. So I think- And it could be underlying facts, as Judge Jen suggested in some of his questions, there could be an underlying factual dispute, which we would not resolve. But the ultimate made that determination. So in Thompson, and then Thompson itself, cites a couple of cases where the Court adopted a new legal standard and applied that legal standard to undisputed facts. And that dictated the outcome. That's what Thompson says. So I think that would be appropriate. But I don't think there's any reason for this Court to adopt any new legal standard. It's cava cutie. So it's just an application of fat to law. And so the reason we're arguing that the decision that there's no judicial action in the legal relationship of the parties is factual, for example, is there was a single judge, Judge Lauer, who denied the petition for attorney's fees. That same judge was on the panel that ordered the affidavits to determine whether the petition for a written- But he's essentially arguing that when you look at the underlying record, which is not disputed, nobody can dispute what the order says, that that constitutes under the legal framework that Supreme Court has set up for us, that they constitute a prevailing party, given those circumstances. I think our case law has treated that as a legal question. Your Honor, I don't know if this is a sword either of us want to fall on. So you want to go back, go over to the merits? Yes, Your Honor. But I do think, Thompson, you're right, Your Honor. I've seen those cases. And Thompson, it does say when the Court's adopted a new legal standard. So I think there is a difference there. But this does fall squarely within CAVA-CUTI. There was a dismissal for mootness, just like in CAVA-CUTI. The only difference here is in CAVA-CUTI, the mootness was determined by a decision of the regional office where the VA granted the veteran service-connected for a temporary disability based on individual unemployability. Here, the mootness is determined by the affidavits and the veteran court's determination. Either way, it's a dismissal for mootness. And under CAVA-CUTI, that means there's no prevailing party because there's no judicial action change in the legal relationship between the parties. What about your friend, towards the end of his remarks, talked about that sentence in the order, which I don't have in front of me now, that says you will do something? Judge Post, I think it goes back to your question where you said the context of that decision makes it seem like the veterans court is just asking for information to determine whether it's moot. I think it's on Appendix 611, the court says, the secretary's counsel, at their argument, raised the possibility of mootness. We asked the secretary to provide information confirming that it actually mooted the case and that's what we're doing here in the effort to provide affidavits. And then it lists the three issues that would be addressed in the affidavits. So, there's no command there. If there are any doubt about that in the dismissal for mootness, there's no order for the VA, no obligation from the court to impose a new policy. And what about your friend's point about contempt? That if, in fact, the VA, the next day, went out and did something completely different or undid everything they do, what would be the consequences of that? So, there would be no violation of a court order. And I think the veterans court referenced this in the mootness when they said, we're not going to impose sanctions because the petitioner had also requested the court to impose a $1,000 sanction for every time the VA mailed something to the order that's been violated and the court declined to enter one. So, if there was a mistake in the future, then I think that'd be an issue that would be litigated under a different case. And like in Cavaquity, I think the court said, well, the secretary's conduct here might set up a case in the future for future orders and future contempt proceedings, but that's not an issue here. What if the court found out or the other side put forth evidence a week later that what they said in the affidavits was untrue? Would that result in contempt? Would the court want to go back and maybe undo its dismissal and say, this case is no longer moot because they haven't done what they said they were doing? Is that the consequence of a violation here? I think that would be the consequence, Your Honor, and it still wouldn't be contempt. You would still need an order first to be violated before the court would issue some sort of- But there would be consequence. There should be consequence. The consequence, it seems to me, off the top of my head is that if I were the judge in that case, I'd say, well, you misrepresented this to me. He may be unhappy about that, and therefore, I'm vacating my order to dismiss because this case, in fact, was not moot when you said it should have been mooted. Yes, Your Honor. If, in fact, it turns out that the representations sworn under oath that were submitted to the court were incorrect, there would be consequences for that, but there's nothing in the record to indicate that the mailings continued to go to the incorrect addresses. And the consequences would not be enforcement of what they said they were going to do. It would simply be, this case is no longer moot. It's not moot. Yes, Your Honor, and then maybe an order, and then later on, if the problems continue, you might have- But the court would have to then adjudicate the merits. Yes, Your Honor. But perhaps that suggests that this November 2021 order did change the relationship between the parties in the sense that now the VA, epistemically, is hanging over them, that they have now sworn that something is true, and now if it's not true, then they are subject to contempt suits. So just by virtue of now being in that situation, being placed in that situation in a way that they had never been before, could arguably be considered a different status, a different relationship. Yes, Your Honor, on that point, I would point to CAB ACUTI, and there on 617, I believe it is, the court said, the government's representations about the nature of the relief it was providing would have stopped it in the future from changing course, but it does not render the Veterans Court dismissal a judicial premature sufficient to make CAB ACUTI the prevailing party. And I think that applies here as well. It's not sufficient. There's no judicial action changed in that legal relationship with the parties. The VA just took those steps voluntarily without any order, which is pretty important for the prevailing party distinction here under CAB ACUTI and Buchanan. Is there anything that suggests that the scope of the court's order, making this list of demands of things for the VA to confirm are true, is above and beyond the scope of what the VA attorney had attested to during the oral argument before the order of issue? And in that way, perhaps the order is more expansive in its demands, knowing what the VA is up to beyond what the VA itself had represented in court? No, Your Honor. Looking at Appendix 611, which is where the court discusses the various representations made by the Secretary compared against the three paragraphs on Appendix 612, those appear to be consistent. In other words, the Veterans Court summarized what the Secretary's counsel said and then listed that out in the order and requested that they submit the affidavits. If there's no further questions on CAB ACUTI, I would just, a couple of responses to the reply of the case law there. Petitioner relies on Hewitt, the dicta in Hewitt, but Buchanan expressly disallowed those and said there is no catalyst theory. So there's a couple citations and even at length quotes from Justice Scalia's opinion in Hewitt, and Buchanan expressly disavowed that dicta and said it's dicta. So that is not binding law. Did Justice Scalia write Buchanan? No, Chief Justice Rehnquist did, but Justice Scalia actually, pardon me, he wrote a probably created some issues below. It's an interesting concurrence, but he did expressly say that is not good law. And he concurred in the majority too. On Lackey, that's irrelevant because that case dealt with a preliminary injunction and a bright line rule that a preliminary injunction does not entitle a party to prevailing party status. It also arguably reflects a reaction by the Supreme Court to a broadening interpretation of EJIA. So in that sense, it would actually non-petitioner's claim here. And finally, there's a reliance on Laidlaw. That case deals with standing and mootness and is not relevant to the course interpretation of EJIA in this case. But he's relying on some of the language in Lackey to support his view. You're right, the Lackey thing was just preliminary injunctions. No, but he's relying extensively on that case, right? In reply, they do appear to rely on that. Yes, rely on it extensively. But that case, it was a bright line rule about preliminary injunctions. And it also said, well, the judicial action has to be enduring, which ties into the preliminary injunction. It can't be preliminary. It would have to be a permanent injunctive relief. So those are kind of the takeaways from Lackey. But it's not relevant here when you have a dismissal for mootness. It's much more bucking in and capacuity. If there's no further questions, we respectfully request the court affirmed. Thank you, counsel. Mr. Strong has some rebuttals on it. Your honors, sometimes when you have a hammer, everything looks like a nail. And I think that that's what my friend has done with Buckinon. Everything looks like it's a voluntary achievement of relief. And it's not here. This is a screw. This is a different set of facts. And because it's different, it requires a different test. It's a very unique situation. Even on the facts most generous to the VA, vet lag prevails because the case resembles a court-ordered consent decree in all material respects. There, a plaintiff sues an agency. The agency makes a promise that benefits the plaintiff. The court sanctions the agency's promise by issuing a decree without evaluating the merits. If evidence arises that the agency broke its promise, it can be cited for contempt. The only difference here is that the sanctioned promise happened ex ante, but in a consent decree case, it happens ex post. So it's a little bit different. But no one would dispute that the plaintiff in the consent decree case under the aegis would prevail. And similarly here, what happened? Vet lag. We sued the VA. The Veterans Court sanctioned the VA's promises by ordering affidavits without evaluating the merits. The VA promised to fixing the addresses in their system. If evidence arises that the VA broke its promise, it can be cited for contempt. So it's a different case than Buckanon, and it's a different case than Cavachudi. And this court gets to decide the resolution of that. And to the extent there are disputed facts, it should remand. And to the extent that the facts are undisputed, it should decide it. With that, I'll rest on my briefs, and thank you, Your Honors. Thank you, Mr. Strong. Thank you to both parties. The case is submitted.